The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion regarding certain provisions in Act 873 of 2007, which created the Arkansas Alternative Fuels Development Program. You have quoted two provisions of the act regarding the definition of "biofuel." After quoting those sections, you ask the following question regarding vegetable-oil fuels that lacked the appropriate quality designations from either the American Society for Testing and Materials Specification or other federal entity as in effect on February 1, 2007: "Are such producers or distributors [of the above described vegetable-oil fuels] eligible for the provisions of this Act under the category of "other" biofuels?"
RESPONSE
In my opinion, the answer to your question is "no."
Section 1 of Act 873 of 2007 added chapter 13 to title 15 of the Arkansas Code. The codified definitions you cite, which are found at A.C.A. § 15-13-102(5) (Supp. 2007), define "biofuel" as follows:
 (5)(A) "Biofuel" means a renewable, biodegradable, combustible liquid fuel derived from biomass or other renewable resources that can be used as transportation fuel, combustion fuel, or refinery feedstock and that meets the American Society for Testing and Materials Specification and federal quality requirements as in effect on February 1, 2007, for each category or grade of fuel. *Page 2 
 (B) "Biofuel" includes without limitation:
 (i) Biodiesel or renewable diesel;
 (ii) Renewable gasoline;
 (iii) Renewable jet fuel;
 (iv) Renewable naphtha;
 (v) Biocrude; and
 (vi) Other renewable, biodegradable, mono alkyl ester combustible fuel derived from biomass;
I must begin by addressing your reference to two different definitions of the term "biofuel." You have suggested that subsection (5)(B)(vi) "further define[s]" the term "biofuel." I must note, however, that this subsection does not further define the term in the sense of adding any requirements to (5)(A)'s definition. Instead, subsections (5)(A) and (5)(B) define the term "biofuel" by using the two different senses in which a definition may be constructed: intension[1] and extension. The former gives the attributes or meaning of a term. The latter givesexamples of a term. Webster's Dictionary explains both terms: intension
"(of a term) [is] the set of attributes belonging to all and only those things to which the given term is correctly applied"; extension is "the class of things to which a term is applicable." Random House Webster'sUnabridged Dictionary, 684, 991 (2d ed., 1998).
Subsection (5)(A) describes the intension of the term "biofuel." Thus, subsection (5)(A) explains all of the "attributes belonging to" everything that can be called a "biofuel" for purposes of this statute. This is clear from subsection (5)(A)'s first phrase: "`Biofuel' means. . . ." (Emphasis added.) In contrast, subsection (5)(B) gives the extension of the term "biofuel." Thus, subsection (5)(B) explains the "class of things" that we can call "biofuel." This is clear from subsection (5)(B)'s first phrase: "`Biofuel' includes. . . ." (Emphasis added.)
With this understanding of the relationship between (5)(A) and (5)(B) in mind, we can see that the meaning of the term "biofuel" — as defined in (5)(A) — still applies to limit what items constitute legitimateexamples of "biofuel." Thus, any example of "biofuel" in (5)(B) must also meet all of (5)(A)'s elements for the meaning of "biofuel." One of those elements is the following quality requirement: "meets the American Society for Testing and Materials Specification and federal quality *Page 3 
requirements as in effect on February 1, 2007, for each category or grade of fuel." Therefore, all legitimate examples of biofuel in (5)(B) must meet the quality requirement.
Your question asks whether a legitimate example of biofuel can fail to meet (5)(A)'s quality requirement. For the above reasons, the answer is "no," in my opinion.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This is not to be confused with the term "intention," which describes a person's state of mind. *Page 1